IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RACHAEL MAXWELL aka RACHAEL HOLLEY, <br><br> Plaintiff, <br><br> vs. <br><br> JAY V. BARNEY; JAY V. BARNEY, P.C.; KNIGHT ADJUSTMENT BUREAU, a Utah corporation; GOLD CROSS SERVICES, INC. dba GOLD CROSS AMBULANCE, a Utah corporation; and DOES 1 through 15, <br><br> Defendants. | MEMORANDUM OPINION AND ORDER <br><br><br> Case No. 2:06-CV-00840 <br><br> Judge Dee Benson |

This case arises from Defendant Gold Cross Ambulance's ("Gold Cross") disclosure of information to the collection company it hired to collect a debt from Plaintiff Rachael Maxwell. Maxwell argues that Gold Cross is a debt collector as contemplated by the Fair Debt Collection Practices Act ("FDCPA") and violated the same. Presently before the Court is Gold Cross's motion to dismiss pursuant to Rule 12(b)(6) or for summary judgment pursuant to Rule 56 on all claims against it. Dkt. No. 4. Defendants Jay V. Barney ("Barney") and Jay V. Barney, P.C. ("Barney P.C.") joined Gold Cross's motion in addition to filing their own motion to dismiss pursuant to Rule 12(b)(6). Dkt. No. 7. Also before the Court is Maxwell's motion to strike specified parts of an affidavit submitted by Gold Cross in support of its motion to dismiss. Dkt. No. 23. The Court will address each of these motions.

**Factual Background**

In February 2000, Gold Cross provided ambulance services to Maxwell after she had

been raped.  Shortly after, Gold Cross billed Maxwell for the ambulance transport service. Maxwell failed to pay.  In July 2000 Gold Cross turned collection of Maxwell's account over to Knight Adjustment Bureau ("Knight"), an independent company Gold Cross frequently used to attempt to collect past due accounts.

After five years of trying to collect, on September 21, 2005, Knight sent Maxwell a written demand for payment.  On September 28, Knight received a letter from Maxwell in which she requested information verifying the debt.  Knight then contacted Gold Cross for additional information to verify that Maxwell owed the debt in question.  On September 29, Gold Cross provided Knight with a copy of the ambulance trip ticket, prepared in connection to Maxwell's ambulance transport in 2000.  The ambulance ticket is a contemporaneously prepared standard document used by Gold Cross to briefly explain the circumstances of the ambulance transport and the basis for the charge.  Included is a brief statement regarding Maxwell's rape which was the reason for the trip.  Maxwell claims these references to her rape constituted "protected health information" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). In turn, Knight provided a copy of the ambulance ticket to Maxwell in response to her request for verification.  Upon receiving the ambulance ticket, Maxwell claims she suffered severe emotional distress.

On January 4, 2006 Knight, through Barney P.C., filed a lawsuit against Maxwell to collect on Maxwell's debt.  Knight's attorney, Barney, attached a copy of the ambulance ticket to the complaint.

On October 2, 2006, Maxwell brought suit in this Court against Defendants alleging

violations of the FDCPA, as well as five other claims arising out of state law.[1]

## Analysis

### I.  Gold Cross's Motion to Dismiss or for Summary Judgment

Gold Cross argues that the FDCPA cause of action fails because it is barred by the statute of limitations and fails to state a claim upon which relief can be granted.

#### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The court "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006). The Court accepts all well-pleaded facts as true and in the light most favorable to the nonmoving party. Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1212 (10th Cir. 2006) (citation omitted).  A motion to dismiss should be granted "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief."  Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted).

#### B. Statute of Limitations for the FDCPA

Section 1692k(d) of the FDCPA allows an action to enforce a violation "in any appropriate United States district court . . . within one year from the date on which the violation occurs."  In calculating the statute of limitations period, the day of the violation is not counted. Johnson v. Riddle, 305 F.3d 1107, 1115 (10th Cir. 2002).  Also, a litigant is allowed to file court

---

[1] Maxwell alleges 1) violation of the Utah Consumer Sales Practices Act; 2) intentional infliction of emotional distress; 3) invasion of privacy by intrusion upon seclusion; and 4) punitive damages, against all Defendants.  Maxwell also alleges an additional claim of respondeat superior against Gold Cross for Knight and Barney P.C.'s allegedly tortious actions.

papers the next business day following the last day of the limitations period if that day falls on a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a).

In this case, the statute of limitations issue hinges on when the violation occurred. It is undisputed that Knight mailed the letter containing the ambulance ticket on Friday, September 29, 2005, and that Maxwell filed her complaint on Monday, October 2, 2006. If the violation occurred when Knight *mailed* the letter,[2] then the statute ran on Friday, September 29, 2006, barring Maxwell's claim. If the violation occurred when Maxwell *received* the letter, her claim was timely filed.

Gold Cross argues that the violation occurred when Knight mailed the letter. In support, Gold Cross cites to an Eighth Circuit decision where the court held that "[o]nce [the company] placed the letters in the mail, its conduct with respect to any violation any of the FDCPA was complete. The date on which [the company] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered section 1692k(d)." Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir. 1992); see also Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995) (adopting the Eighth Circuit's rule).

The Tenth Circuit has never directly addressed this issue, but decided in Johnson that the statute of limitations begins to run in a FDCPA case upon service of process, and not the initial filing of a lawsuit, because it is the last opportunity for a company to comply with the FDCPA. Johnson, 305 F.3d at 1114 n.4. In addition, the Johnson court reiterated that it follows "the traditional discovery rule" that a "federal statute of limitations does not begin to run until

---

[2]Maxwell's Second Amended Complaint asserts the letter was mailed and Maxwell, therefore, did not receive it until September 30 or after.

-4-

plaintiff knows or has reason to know of the existence and cause of his injury." Id. at 1114 n.3.

Accordingly, the limitations period began to run when Maxwell knew or had reason to know of the existence and cause of her injury, and this happened when she received the letter on September 30, 2005, or later. Therefore, under section 1692k(d) of the FDCPA and Federal Rule of Civil Procedure 6(a), Maxwell's claims were timely brought.

### C. "Debt Collector" Under the FDCPA

Gold Cross contends that it is not a debt collector as defined by the FDCPA.

The FDCPA regulates abusive practices by debt collectors. See 15 U.S.C. § 1692d. In relevant part, section 1692a(6) defines a debt collector as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." However, the act excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." Id. § 1692a(6)(F). Thus, the act excludes creditors[3] from liability unless a creditor, "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Id. § 1692a(6).

Gold Cross argues that it does not fall under the definition of a debt collector for two reasons. First, the debt in question arose from ambulance service provided by Gold Cross itself, clearly making Gold Cross a creditor under section 1692a(6)(F). Second, Gold Cross was not

---

[3]Creditor is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

attempting to collect its own debt by using a separate pseudonym for its own company. Cf. Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc., 471 F.3d 780, 781 (7th Cir. 2006) (the creditor itself sent a letter to the debtor stating that the letter was coming from someone other than the creditor).

In response, Maxwell admits Gold Cross is a creditor, but makes an argument concerning Gold Cross's "non-delegable duty" not to disclose Maxwell's protected health information. In addition to being virtually incomprehensible, the argument is irrelevant. Under Maxwell's theory, Gold Cross is somehow liable under the FDCPA because it could not delegate its duty of privacy to Knight. Consequently, when Knight mailed the ambulance ticket to Maxwell, it was effectively Gold Cross's violation. In support, Maxwell cites three unreported district court decisions, but they are inapposite and distinguishable.[4]

Maxwell alleges no facts that move Gold Cross from the definition of creditor to debt collector under the FDCPA. It is undisputed that Maxwell's debt originated with Gold Cross. Maxwell alleges no facts that show Gold Cross attempted to collect its own debt by using the name of Knight. Knight, an independent collection company, attempted to collect the debt pursuant to its agreement with Gold Cross. Therefore, because Gold Cross is not a debt collector

---

[4]Maxwell cites to Domico v. Etan Indus., Inc., No. 98C1912, 1998 WL 765058 at *4 (N.D. Ill., Oct. 26, 1998); Denkers v. United Compucred Collections, Inc., No. C962946, 1996 WL 724784 at *3-4 (N.D. Cal, Nov. 27, 1998); Fratto v. Citibank, No. 94C1817, 1996 WL 554549 at *7 (N.D. Ill, Sept. 25, 1996). While the cases support the view that Gold Cross could be a debt collector if it exercised sufficient control over Knight, in each of the cases the court's ruling was supported by specific allegations that the creditor was using a debt collector's name or using a debt collector as a "mailing service" in order to collect on the creditor's own debts. Maxwell does not make similar allegations concerning Gold Cross's level of control that would justify holding Gold Cross liable as a debt collector under the FDCPA.

as defined by the FDCPA, Maxwell cannot state a claim against Gold Cross under the act.

### D. Sufficiency of Facts Supporting Maxwell's FDCPA Claim

Even if Gold Cross could be construed as a debt collector under the FDCPA, Maxwell has not alleged sufficient facts to support a claim for relief under the FDCPA.

Maxwell alleges that Gold Cross violated two sections of the FDCPA: 1) § 1692d Harassment or abuse, and 2) § 1962f Unfair practices. Maxwell bases its claims on one fact: that Gold Cross provided the ambulance ticket to Knight, and then Knight mailed the ambulance ticket to Maxwell.

#### 1. § 1692d Harassment or Abuse

15 U.S.C. § 1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Without limiting its application, the act provides a list of violative conduct:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation or property of the person.
>
> (2) The use of obscene or profane language . . . .
>
> (3) The publication of a list of consumers who allegedly refuse to pay debts . . . .
>
> (4) The advertisement for sale of any debt to coerce payment of the debt.
>
> (5) Causing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse or harass . . . .
>
> (6) . . . the placement of telephone calls without meaningful

disclosure of the caller's identity.

15 U.S.C. § 1692d.  Gold Cross argues that Maxwell's complaint does not include any of these practices.  Maxwell simply counters that the natural consequence of receiving the ambulance ticket was to harass, oppress, and abuse her.

The FDCPA prohibits only oppressive and outrageous conduct.  Maxwell herself requested validation of the debt, so Gold Cross provided the ambulance ticket as validation of the bill.  The FDCPA does not prohibit providing a receipt for services to a debtor who is questioning a debt.  Gold Cross's conduct does not rise to the level of the harassing, oppressive or abusive acts prohibited by 15 U.S.C. § 1692d.

### 2. § 1692f Unfair Practices

15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  This includes, but is not limited to: collection of an amount not expressly agreed upon by statute; acceptance or solicitation of a post dated check; causing charges to be made to any person for communications regarding the debt; communicating by postcard; or including collection information on the outside of an envelope. 15 U.S.C. § 1692f.

Gold Cross argues that Maxwell has not stated any facts on which this Court could base a ruling that any defendant used unfair or unconscionable means to collect a debt.  In response, Maxwell argues that the misconduct prohibited in the act is milder than Gold Cross's conduct. Maxwell argues that disclosure of the ambulance ticket caused substantial injury to Maxwell and was "so outstandingly bad" to constitute unfair or unconscionable means.  Mem. in Opp'n 19,

Dkt. No. 29.

Gold Cross's actions do not constitute unfair or unconscionable debt collection practices. None of its actions, including disclosing the ambulance ticket, resemble those enumerated in 15 U.S.C. § 1692f. Because Maxwell has not alleged any facts on which the court could base a ruling that Gold Cross used unfair or unconscionable means to collect a debt, Maxwell has not set forth a cause of action under 15 U.S.C. § 1692f.

### E. Conclusion

Based on the facts alleged by Maxwell, the FDCPA claims are timely brought. Nevertheless, Gold Cross is not a "debt collector" as defined by the FDCPA. Even if Gold Cross was considered a debt collector, Maxwell has not set forth sufficient facts to demonstrate a cause of action under the FDCPA. Accordingly, Gold Cross's motion to dismiss or for summary judgment is granted as to the FDCPA claims.

## II. Barney and Barney P.C.'s Motion to Dismiss

Maxwell asserts that Barney and Barney P.C. violated the FDCPA by attaching a copy of the ambulance ticket containing her protected health information to a complaint filed by Barney P.C. as counsel for Knight in a state court debt collection action. Barney and Barney P.C. joined Gold Cross's motion to dismiss and argue that Maxwell failed to plead facts sufficient to support her claims under the FDCPA. Even if Barney could be classified as a "debt collector" under the FDCPA, as argued by Maxwell,[5] his conduct was not violative as a matter of law under 15

---

[5] In support, Maxwell cites Brumbelow v. Law Offices of Bennett & Deloney, 372 F.Supp.2d 615, 621 (D. Utah 2005) holding that under the broad language of the FDCPA a shareholder of a corporation can be held personally liable as a "debt collector" without piercing the corporate veil.

U.S.C. § 1692d (harassment or abuse) or § 1692f (unfair practices).

### A. § 1692d Harassment or Abuse

Attaching the ambulance ticket to a complaint did not have the natural consequence of harassment, oppression, or abuse. See 15 U.S.C. § 1692d. Some examples of harassment, oppression, or abuse stated in the FDCPA are: using or threatening violence; using obscene language; publishing the names of debtors; advertising the debt for sale to coerce payment; or using abusive telephone practices. Id. Here, the ambulance ticket was attached to a complaint properly filed in the course of litigation proceedings, and the information contained on the ambulance ticket provided proof of the debt at issue in the proceedings. This conduct does not rise to the level of harassment, oppression, or abuse as outlined in the act.

### B. § 1692f Unfair Practices

Furthermore, Barney's conduct is not an unfair or unconscionable means to collect a debt. See 16 U.S.C. § 1692f. Examples of unfair or unconscionable means to collect a debt include: collection of an amount not expressly agreed upon by statute; acceptance or solicitation of a post dated check; causing charges to be made to any person for communications regarding the debt; communicating by postcard; or including collection information on the outside of an envelope. Id. Legal actions are not unfair or unconscionable means to collect a debt, nor is attaching to the complaint proof of the debt at issue when the debtor previously requested validation of the debt.

### C. Conclusion

For the reasons stated above, Barney and Barney P.C.'s motion to dismiss is granted with

respect to the FDCPA claims because Maxwell failed to state a claim upon which relief can be granted.

### III. Subject Matter Jurisdiction Over State Law Claims

This Court may hear Maxwell's claims only if it is a case involving diversity of citizenship or a case arising under federal law.  See 28 U.S.C. §§ 1331, 1332.  Federal jurisdiction in this case is based only on Maxwell's FDCPA claims,[6] which, as discussed above, have been dismissed.  District courts may decline to exercise supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Court declines to do so here.

### IV.  Maxwell's Motion to Strike Specified Parts of the Moffitt Affidavit

Maxwell asks the Court to strike paragraphs 4–8, 12–14, 16, and 18–19 from Michael S. Moffitt's ("Moffitt") affidavit supporting Gold Cross's motion to dismiss or for summary judgment.  Moffitt served as the Senior Vice President of Gold Cross since 2002 and is responsible for its billing and collection practices.  Under Federal Rule of Civil Procedure 56(e)(1) an affidavit in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

**A. Paragraphs 18 and 19**

Paragraphs 18 and 19 of the affidavit contain information regarding a complaint Maxwell initially filed with the U.S. Department of Health and Human Services ("HHS") on October 17,

---

[6] There is no diversity of citizenship because both Maxwell and the Defendants are citizens of the State of Utah.  Second Am. Compl. at ¶¶ 5, 6, 7, 9.

2005. This complaint alleged that Gold Cross violated HIPAA by providing Knight with a copy of the ambulance ticket. After an initial investigation, HHS declined to pursue prosecution and dismissed the complaint finding that Gold Cross did not violate the HIPAA privacy rule.

First, Maxwell argues, that the HHS decision is not binding or preclusive with respect to her claims, and because it is not binding, the HHS decision is irrelevant in this case. Gold Cross does not argue that the decision is binding but instead argues that under the broad language of Federal Rule of Evidence 401[7] the letter is relevant at least to show Maxwell's knowledge of her injury in October 2005, to delineate a factual time line, and to set out the relevant law governing this case.

Additionally, Maxwell argues that the statements in paragraphs 18 and 19 are inadmissable hearsay. Maxwell concedes that the HHS decision falls within the public records and reports exception to hearsay under Rule 803(8),[8] but argues that because there was no cross examination at a hearing the informal findings of the HHS are not trustworthy. For support Maxwell cites to the Tenth Circuit's decision in Denny v. Hutchinson Sales Corp., where the court stated that a "lack of formal procedures and an opportunity to cross examine witnesses are proper factors in determining the trustworthiness of the finding." 649 F.3d 816, 821 (10th Cir. 1989). However, Gold Cross also cites to Denny, which provides other factors for determining

---

[7]Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

[8]Federal Rule of Evidence 803(8) in relevant part excludes "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, *unless the sources of information or other circumstances indicate lack of trustworthiness*." (emphasis added).

the trustworthiness of a report, such as: "the timeliness of investigation; the special skill or experience of the investigator; whether a hearing was held and the level at which it was conducted; [and] possible motivation problems." Id. Gold Cross argues that cross examination is not the dispositive factor in determining trustworthiness, especially where Maxwell disputes the legal conclusions of the HHS, not necessarily its factual findings, and where Maxwell does not take issue with any of the other factors.

Maxwell's argument that the HHS letter is not trustworthy fails. Maxwell has pointed to only one of several factors bearing on trustworthiness, and the mere fact that there was no cross examination, absent other factors, does not render the letter untrustworthy.

Nonetheless, the HHS report is not relevant. Maxwell's knowledge about her injury in October is not relevant to Gold Cross's defense. Also, the HHS report has no binding or preclusive effect on this Court. For these reasons, paragraphs 18 and 19 of the Moffitt affidavit are stricken.

### B. Paragraphs 4–6 and 12–14

Paragraphs 4–6 and 12–14 deal mostly with the underlying facts and timeline in this case, which Maxwell argues are not based on Moffitt's personal knowledge. Maxwell's motion to strike paragraphs 4–6 and 13, however, is moot because the information in these paragraphs is also located in Maxwell's Second Amended Complaint and in the undisputed facts section of her opposition memorandum. Second Am. Compl. 4–5; Mem. in Opp'n to Def.'s Mot. to Dismiss/Mot. for Summ. J. 1. The Court does not need to consider paragraph 12, which states that Gold Cross did not provide Knight with any protected health information prior to September

2005. Because Maxwell has not included any claims for disclosures prior to September 2005, the paragraph is irrelevant. This leaves paragraph 14 for the Court's consideration.

In paragraph 14 Moffitt states "I have been informed" that Knight received a letter "question[ing] whether she was the individual who Gold Cross transported." Maxwell argues that Moffitt does not have personal knowledge concerning the letter's contents and that he has not established a foundation indicating that the information came from a reliable source, such as a regularly kept business record. In support, Maxwell cites to the holding of Argo v. Blue Cross & Blue Shield, that "statements of mere belief in an affidavit must be disregarded." 452 F.3d 1193, 1200 (10th Cir. 2006) (internal citations omitted). Gold Cross attempts to distinguish Argo by arguing that the statement in Argo was one about which the declarant could not have personal knowledge and did not explain the source of knowledge. Gold Cross argues that in this case paragraph 14 contains facts that Moffitt is normally privy to, and his information came from persons he believes to be reliable because he is the Senior Vice President of Gold Cross and oversees billing and collection.

In light of Moffit's source of knowledge, paragraph 14 is stricken from the affidavit. Moffitt testifies in paragraph 14 as to the contents of Maxwell's letter based, not upon his own observations, but on what others have told him. There is no indication that Moffitt has seen the letter, much less read it. Paragraph 14 is not supported by a sufficient foundation.

**C. Paragraph 7**

Paragraph 7 states, in part, that Knight "is engaged by Gold Cross under an agreement to perform collection of some of Gold Cross's past due accounts." Maxwell contends that this

paragraph should be stricken under Rule 56(e)[9] because it refers to an agreement but does not provide a true copy of the agreement. This issue, however, is moot because Gold Cross has provided a copy of the agreement in Moffitt's second affidavit attached to Gold Cross's reply memorandum in support of its motion to dismiss or for summary judgment. Dkt. No. 33.

### D. Paragraphs 8 and 16

Paragraph 8 states "Gold Cross does not control the manner in which [Knight] performs its third party collection services for Gold Cross." Instead, after being engaged by Gold Cross, Knight "independently performs its services without further direction from Gold Cross." Maxwell argues that this is a legal conclusion which should be stricken. Gold Cross simply argues that the statements are not conclusory.

Paragraph 8 should not be stricken because Moffitt's position and responsibilities at Gold Cross provide the basis for his personal knowledge that Gold Cross does not control Knight and that Knight is an independent contractor.  Moffitt has been employed with Gold Cross since 1979 and has served as Senior Vice President since 2002.  Moffitt is responsible for overseeing Gold Cross's ambulance service business, including its billing and collections practices.

The disputed part of paragraph 16 states, referring to the information contained on the ambulance ticket, "[t]his information helped verify that Maxwell was the person who owed the debt to Gold Cross." Maxwell argues that whether the information helped verify the debt is a legal conclusion and, in addition, its use to verify a debt lacks sufficient foundation.  Gold Cross simply asserts that the statement is proper.

---

[9] "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  Fed. R. of Civ. P. 56(e).

The statement in dispute in paragraph 16 is not a legal conclusion but merely an explanation of why Gold Cross provided Knight with the ambulance ticket. Additionally, there is an adequate foundation found for this statement in the preceding paragraphs of the affidavit explaining Knight's belief that Maxwell was questioning whether it was attempting to collect from the right person.

### E. Conclusion

In conclusion, the Court grants Maxwell's motion to strike in part. Paragraphs 18–19 are stricken because the HHS determination is not relevant in this action. Paragraph 14 is stricken because Moffitt's belief about the content of the letter to Knight is not based on personal knowledge. Accordingly, the Court has not relied on any of these declarations in makings its determination with regard to any of the above motions.

### Conclusion

In accordance with the above analysis, the Court GRANTS Gold Cross's motion to dismiss or for summary judgment. The Court GRANTS Barney and Barney P.C.'s motion to dismiss. The Court declines to exercise supplemental jurisdiction over the state law claims and they are DISMISSED WITHOUT PREJUDICE. Maxwell's motion to strike is GRANTED IN PART.

IT IS SO ORDERED.

DATED this 1st day of May, 2008.

_____
Dee Benson
United States District Judge